Signed: July 25, 2008

_____
**LESLIE TCHAIKOVSKY
U.S. Bankruptcy Judge**
_____



UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re

HARRY FRED KOELLING, LINDA ANN KOELLING,

        Debtors.
_____/

No. 04-46443 TD
Chapter 7

**MEMORANDUM OF DECISION**

    The motion of Lois Brady (the "Trustee"), the chapter 7 trustee in the above-captioned bankruptcy case, for approval of an agreement with Burlingame Capital Partners II ("Burlingame" and the "Burlingame Agreement") and for authorization to sell the residence (the "Residence") of the above-captioned debtors' (the "Debtors") free and clear of certain liens came before the above-captioned court on July 2, 2008. The motion was opposed by the Debtors and by GE Capital Corporation ("GE"), which asserts a judgment lien on the Residence (the "GE Judgment Lien"). At the conclusion of the hearing, the Court took the motion under submission. Having duly considered the evidence presented and the argument made, the Court concludes that the Agreement may not be approved and the Trustee may not be

authorized to sell the Residence free and clear of the GE Judgment Lien. The reasons for the Court's decision are set forth below.

**SUMMARY OF FACTS AND PROCEDURAL HISTORY**

The Debtors filed the above-captioned case as a chapter 11 case on November 16, 2004. Earlier the same year, they filed a chapter 11 case for their corporation, Qmect, Inc. ("Qmect"), an electroplating company. Virtually all of Qmect's assets were encumbered by two liens, a junior lien held by Burlingame and a senior lien originally held by Comerica Bank-California ("Comerica"), which Burlingame had purchased and assigned to an affiliate, Electrochem Funding LLC ("Electrochem").

In March 2006, Burlingame was granted relief from the automatic stay in the Qmect case so as to foreclose on most of its collateral: i.e., the operating assets of Qmect's business. Burlingame purchased Qmect's assets for a nominal amount, subject to the senior secured claim of Electrochem, its affiliate. The Qmect case was converted to chapter 7 on October 6, 2006.

The Koellings executed personal guaranties of their secured debt to both Comerica and Burlingame. After Burlingame foreclosed on Qmect's assets, the Koellings continued to defend against these guaranty claims, primarily, by asserting offsetting claims of misconduct against Burlingame. Some of these claims were litigated in state court and some in the bankruptcy court. Ultimately, virtually all of the Koellings' claims were unsuccessful. On March 5, 2008, the Koellings' chapter 11 case was converted to chapter 7.

2

At the time the chapter 11 case was filed, the Residence was encumbered by a first deed of trust in favor of Washington Mutual Bank ("WAMU" and the "WAMU Deed of Trust"). It was also encumbered by an attachment lien in favor of Burlingame (the "Burlingame Attachment Lien") and by the GE Judgment Lien. Both the Burlingame Attachment Lien and the GE Judgment Lien were recorded pre-petition, after the recordation of the WAMU Deed of Trust.[1] Finally, after the chapter 11 case was filed, the Internal Revenue Service (the "IRS") filed two tax liens (the "IRS Liens"). The IRS concedes that these liens attach only to the Debtors' homestead exemption in the Residence.

After the Koellings' bankruptcy case was filed, the state court action in which the GE Attachment Lien was obtained was removed to the bankruptcy court and was tried there. At the conclusion of a trial, on or about August 15, 2006, judgment was rendered in favor of Burlingame. The judgment was amended on or about October 1, 2007 to include post-petition attorneys' fees. On July 1, 2008, Burlingame obtained relief from the automatic stay, and on July 16, 2008 an abstract of judgment was issued by the Court. The Court has not been advised whether the abstract of judgment has yet been recorded.

WAMU was also granted relief from the automatic stay to foreclose the WAMU Deed of Trust after the case was converted to chapter 7. WAMU has not submitted a proposed order reflecting this

---

[1] The Burlingame Attachment Lien was recorded on March 26, 2004. The GE Judgment Lien was recorded on May 14, 2004. Thus, assuming the Burlingame Attachment Lien is still valid, it has priority over the GE Judgment Lien.

ruling and instead has scheduled a continued hearing on its motion for August 15, 2008. However, Burlingame has represented to the Court that the Debtors are in default in their payments on the WAMU Deed of Trust.

The Debtors also hold a 100 percent interest in a corporation that operates a school (the "Shares"): i.e., Kids Connection, Inc. "Kids Connection") and that owns the real property on which the school is located. Burlingame does not claim a security interest in the Shares. On October 2, 2007, Burlingame obtained a judgment against Kids Connection in state court.

On January 9, 2008, Kids Connection filed a chapter 11 petition in the San Francisco bankruptcy court. Kids Connection is currently operating as a debtor in possession. Linda Koelling is serving as the responsible person for Kids Connection, presumably with the Trustee's consent. Burlingame has filed a proof of claim in the Kids Connection bankruptcy case (the "Kids Connection Claim"). It contends that its claim against the Kids Connection estate is secured. Presumably, this secured claim was obtained through post-judgment enforcement proceedings.

## DISCUSSION

The Court will address separately the Trustee's request that the Court approve the Agreement and her request for authorization to sell the Residence free and clear of the GE Judgment Lien.

**A. APPROVAL OF AGREEMENT**

The Agreement contains two severable propositions. First, it provides that Burlingame will pay the Trustee $50,000 if the Trustee

4

succeeds in selling the Residence to some as yet unidentified third party free and clear of the GE Judgment Lien. The Trustee's receipt of this sum is conditioned on its being available, either from Burlingame's share of the sale proceeds or from amounts Burlingame may become entitled to receive from the Kids Connection estate. Burlingame consents to the sale free and clear of the Burlingame Attachment Lien provided it receives all the sale proceeds other than the amounts necessary to pay any unpaid property tax, the WAMU Deed of Trust, and the Debtors' $75,000 homestead exemption.[2]

Second, the Agreement provides that the Trustee will sell the Shares to Burlingame for $100,000. Again, the receipt of this payment is conditioned on the sum being available from one of the two sources identified in the preceding paragraph. The Agreement apparently envisions that the sale of the Shares will be effected immediately and will be effective regardless of whether any payment for the Shares is received by the estate. Moreover, Burlingame retains the right to dispose of its claims against the Kids Connection estate in any fashion it sees fit.[3]

---

[2] Burlingame does not consent to payment of the costs of sale from the sale proceeds. The Trustee estimates that the Residence will sell for approximately $1.3 million. Thus, the costs of sale are likely to exceed the $50,000 Burlingame has agreed to pay the estate for the sale. In the Court's experience, costs of sale tend to equal eight percent of the sale price. Eight percent of $1.3 million would be close to $100,000. Thus, a sale of the Residence would consume all but half of the consideration offered by Burlingame pursuant to the Agreement.

[3] The proposed sale of the Shares is also described as free and clear of liens. However, no liens encumbering the Shares have been identified. The Court will not approve a sale of property of the estate free and clear of unspecified liens. The Agreement also

5

The Agreement has been characterized by the parties as a compromise agreement. The Trustee has the burden of establishing that a compromise agreement is fair and equitable. To permit it to make that determination, the Trustee must inform the Court of: (1) the probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises." In re A & C Properties, 784 F.2d 1377, 1381 (9th Cir. 1986), quoting from In re Flight Transportation Corp. Securities Litigation, 730 F.2d 1128, 1135 (8th Cir. 19874 (citations omitted). For the most part, the Trustee has failed to address these factors. However, this is not the basis for the Court's disapproval of the Agreement.

As stated in In re Mickey Thompson Entertainment Group, Inc., 292 B.R. 415, 421 (Bankr. 9th Cir. 2003), a compromise that disposes of assets of the estate is equivalent to a sale. In fact, the Agreement is more sale than compromise. It is unclear what disputes are being compromised pursuant to the Agreement. Thus, it would be difficult for the Trustee to discuss the factors set forth in A & C Properties. Instead, the Court must consider the factors applicable

---

proposes to release Burlingame and all related parties from all claims. No such claims have been identified. Given the extensive litigation by Qmect and the Debtors prior to conversion of this case, it is unlikely that there are any remaining claims to be asserted. As a result, the Court does not view this provision of the Agreement to be significant.

to sales: i.e., whether the sale price is adequate and whether the sale is in the best interests of the estate.

The Agreement proposes to pay the estate $50,000 in return for the Trustee's sale of the Residence free and clear of the GE Judgment Lien to the extent this amount is available from the sale proceeds payable to Burlingame. As discussed above, this amount is approximately $50,000 less than the probable costs of the sale. Thus, the only potential benefit to the estate from the Trustee's sale of the Residence is to produce a source of payment for the consideration that Burlingame proposes to pay for the Shares.

However, it is not clear that the Trustee will be able to sell the Residence at all, let alone free and clear of the GE Judgment Lien. As noted above, WAMU obtained relief from the automatic stay and may conduct a foreclosure sale before the Trustee is able to locate a buyer and close a sale. In addition, as discussed below, there may be some obstacles preventing the Trustee's sale of the Residence free and clear of the GE Judgment Lien.

As noted above, the Agreement provides that Burlingame will pay the estate $100,000 for the sale of the Shares. However, this agreement is contingent on there being sufficient funds from one of two sources: i.e., the sale of the Residence or Burlingame's rights in the Kids Connection estate. As discussed above, if the source of the payment is the sale of the Residence, the estate will only realize a $50,000 benefit.[4] Moreover, as discussed above, there are

---

[4]As stated above, the Court estimates the costs of sale of the Residence to be about $100,000. Burlingame has agreed to pay up to

7

serious questions concerning whether such a sale will take place.

The Court has insufficient information concerning the Kids Connection estate to be confident that Burlingame will receive $100,000 from its rights against that estate. Burlingame and the Trustee contend that the Shares are worthless: i.e., thus, the $100,000 offered is more than the Shares are worth. From the information provided concerning the Kids Connection assets and liabilities, it appears unlikely that liquidation of the Kids Connection assets would provide any payment to equity holders. Similarly, it is unlikely that any dividend to shareholders would be paid through a chapter 11 plan.

Burlingame presumably contends that its claims against the estate provide a more likely source of payment. It asserts that it holds a secured claim against the estate. However, it has not disclosed how or when it obtained that secured claim. If the security interest was obtained through post-judgment enforcement proceedings, shortly before the chapter 11 case was filed, it may be avoidable as a preference.

Undoubtedly, Burlingame would nevertheless constitute the largest unsecured creditor in the Kids Connection case. However, there is no way to determine when any payments will be made to unsecured creditors. In addition, Burlingame reserves the right to

---

$150,000 for the sale of the Residence to a third party, the sale of the Shares to Burlingame, and the releases of claims against Burlingame and related parties. Thus, the estate would net only about $50,000 if the Agreement were fully performed as contemplated.

8

dispose of its claims in any fashion it sees fit.  Under these circumstances, the Court has no confidence that the above-captioned estate will receive $100,000 from Burlingame's rights against Kids Connection.

**B.  AUTHORIZATION TO SELL THE RESIDENCE FREE AND CLEAR OF THE GE JUDGMENT LIEN**

As discussed above, the Trustee seeks authorization to sell the Residence free and clear of the GE Judgment Lien pursuant to 11 U.S.C. § 363(f).[5]  She does not at present have a buyer and arguably is seeking an advisory opinion.  GE asserts that the Court may not authorize a sale free and clear of its lien in the absence of a pending sale.  The Trustee contends that § 105 permits the Court to do so.  The Court agrees with the Trustee.  There may be circumstances under which it is appropriate to grant such authorization in advance of a negotiated sale.  The question remains whether this is such a circumstance.

The Trustee advances two arguments as to why she should be permitted to sell the Residence free and clear of the GE Judgment

---

[5] Section 363(f) authorizes a bankruptcy trustee to sell property of the estate free and clear of any interest in the property if:
  (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
  (2) such entity consents;
  (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
  (4) such interest is in bona fide dispute;
  (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.
11 U.S.C. § 363(f).

9

Lien. First, she asserts that, because the GE Judgment Lien is junior to the Burlingame Attachment Lien, it could be stripped off the Residence pursuant to 11 U.S.C. § 506(d). In that case, she would not need an order authorizing her to sell free and clear. See In re Canonigo, 276 B.R. 257, 263 (Bankr. N.D. Cal. 2002).

Second, she contends that, given the value of the Residence and the amount of the senior liens, there is at least a bona fide dispute as to whether the GE Judgment Lien ever attached to the Residence in the first place. Both arguments assume that the GE Judgment Lien is junior to the Burlingame Attachment Lien. GE asserts that it is not. The Trustee contends that, at a minimum, the disagreement concerning the priority of the respective liens represents a bona fide dispute.

The Court agrees that there is a bona fide dispute concerning the priority of the two liens. GE contends that the GE Judgment Lien is senior to the Burlingame Attachment Lien because the Burlingame Attachment Lien was never perfected. It cites In re Southern Plastics, Inc., 165 F.3d 1243, 1248 (9th Cir. 1998) for the proposition that an attachment lien may not be perfected by allowance of the underlying claim in the bankruptcy court. A judgment in a plenary action is required. Burlingame correctly points out that it did obtain a judgment against the Koellings; it did not simply obtain allowance of its claim.

However, Burlingame may have lost its priority in another way. As noted above, the Burlingame Attachment Lien was obtained in March 2004. The duration of an attachment lien under California law is only three years unless an extension of that period is obtained. See

10

Case: 04-46443   Doc# 329   Filed: 07/25/08   Entered: 07/28/08 15:49:18   Page 10 of 14

Cal. Civ. Proc. Code § 488.510. There is no evidence that Burlingame ever obtained an extension of that three year period.

Burlingame did obtain a judgment against the Koellings within the three year period. However, under California law, the attaching creditor must obtain a judgment lien, not simply a judgment, while the attachment lien is still in existence. Otherwise, the judgment lien does not relate back, for priority purposes, to the date of recordation of the attachment lien. <u>See</u> Cal. Civ. Proc. Code § 697.020. A judgment lien on real property is obtained by recording a copy of the judgment or abstract in the real property records. <u>See</u> Cal. Civ. Proc. Code § 697.310. As recited above, Burlingame has only recently obtained an abstract of judgment from the Court.

Although bankruptcy law may have extended the time within which Burlingame had the right to retain its priority by obtaining a judgment lien, this is far from clear. <u>See</u> 11 U.S.C. § 108(c); <u>but see</u> 11 U.S.C. § 362(b)(3). Until these issues are resolved, it may not be determined whether Burlingame holds a lien on the Residence at all. On the other hand, if it does not, the proceeds of a sale by the Trustee would presumably be sufficient to pay the GE Judgment Lien claim in full. As a result, the Trustee would not need to sell the Residence free and clear of the GE Judgment Lien.

This unresolved issue would support a sale of the Residence free and clear of the GE Judgment Lien as long as sufficient sale proceeds were held to pay the GE Judgment Lien pending resolution of the status of the Burlingame Attachment Lien. However, for the Trustee to withhold these funds from Burlingame would be inconsistent with

11

the Agreement. Moreover, until the status of the Burlingame Attachment Lien is established, it would be inappropriate for Burlingame to receive any of the sale proceeds. Finally, unless the parties agree to release sufficient sale proceeds to pay the costs of sale, it does not appear that a sale of the Residence would be feasible.

In the interests of judicial economy, the Court will address the Trustee's two arguments as to why the Residence may be sold free and clear of the GE Judgment Lien if the GE Judgment Lien is junior to the Burlingame Attachment Lien. The Court finds both arguments unpersuasive. First, the fact that a trustee could move to avoid a judgment lien that does not encumber any value in the property to be sold does not provide a basis for selling free and clear of the lien under § 363(f). The trustee must actually move to avoid the lien under § 506(d). In the absence of a negotiated sale, the Court would be unlikely to grant such a motion.

Second, the statute cited by the parties for the contention that a judgment lien on a homestead that does not attach to any value-- Cal. Civ. Proc. Code § 704.950(c)--pertains to the type of exemption obtained by recording a declaration of homestead exemption. The Debtors did not record a declaration of homestead until after the GE Judgment Lien was recorded. In fact, they recorded the declaration on the same day that they filed for bankruptcy. In Schedule C of their bankruptcy schedules, they relied on the homestead exemption provided under Cal. Civ. Proc. Code § 704.710 et seq., not on their declaration of homestead. There is no provision comparable to §

12

704.950(c) applicable to the exemption provided under § 704.710 et seq.[6]

**CONCLUSION**

For the reasons stated above, both the Trustee's request for approval of the Agreement is denied and her request for authorization to sell the Residence free and clear are denied. The proposed sale of the Residence would cost the estate more than the consideration being offered for the sale. The proposed source of the consideration for the Shares is too uncertain, particularly given the Court's questions concerning whether the Burlingame Attachment Lien is still valid. A prompt sale of the Residence free and clear of both the Burlingame Attachment Lien and the GE Judgment Lien, the liens to attach to the sale proceeds, would appear to be in the best interests of the estate. Otherwise, WAMU may foreclose its senior consensual lien. However, such a sale would require the consent of parties that the sale proceeds could be used to pay the costs of sale. Counsel for the GE is directed to submit a proposed order in accordance with this decision.

END OF DOCUMENT

---

[6]The Court also notes that the case cited by the parties in support of their contention that the GE Judgment Lien did not attach to the Residence--In re Jones, 106 F.3d 923 (9th Cir. 1997) --was overruled by the Ninth Circuit based on intervening California case authority rejecting the Ninth Circuit's ruling predicting how a California court would rule on an issue of California law. See In re Watts, 298 F.3d 1077, 1080 (9th Cir. 2002).

13

COURT SERVICE LIST

Harry Fred Koelling
Linda Ann Koelling
602 Cornwallis Ln
Foster City, CA 94404

Mark Bostick
Wendel, Rosen, Black and Dean
1111 Broadway 24th Fl.
P.O. Box 2047
Oakland, CA 94604-2047

Robert R. Moore
Allen Matkins Leck Gamble Mallory & Natsis LLP
Three Embarcadero Center, 12th Floor
San Francisco, CA 94111-4074