| | |
|---|---|
| 1 | ROBERT R. MOORE (BAR NO. 113818) |
| | MICHAEL S. GREGER (BAR NO. 156525) |
| 2 | WILLIAM W. HUCKINS (BAR NO. 201098) |
| | MARLENE M. MOFFITT (BAR NO. 223658) |
| 3 | ALLEN MATKINS LECK GAMBLE |
| |   MALLORY & NATSIS LLP |
| 4 | Three Embarcadero Center, 12th Floor |
| | San Francisco, CA 94111-4074 |
| 5 | Phone: (415) 837-1515 |
| | Fax: (415) 837-1516 |
| 6 | |
| 7 | Attorneys for Secured Creditor Burlingame Capital Partners II, L.P. |

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re | Case No. 04-46443 LT7 |
| | Chapter 7 |
| HARRY FRED AND LINDA ANN KOELLING, | BURLINGAME CAPITAL PARTNERS II, L.P.'S RESPONSE TO DEBTORS' OBJECTION TO TRUSTEE'S MOTION FOR ORDER APPROVING COMPROMISE OF CLAIMS WITH BURLINGAME CAPITAL PARTNERS II, L.P. |
| Debtors. | |
| | Date: December 22, 2008 |
| | Time: 10:00 a.m. |
| | Ctrm: 201 |
| | Judge: Hon. Leslie J. Tchaikovsky |

Burlingame Capital Partners II, L.P. ("Burlingame") responds to Debtors' [Fred and Linda Koelling] ("Debtors") Objection to Trustee's Motion for Order Approving Compromise of Claims with Burlingame Capital Partners II, L.P. ("Objection ") as follows.[1]

---

[1] Burlingame's Response is limited to the issues raised by Debtors' Objection and is not intended to address the Trustee's Motion. As set forth in the Declaration of Mark Bostick ("Bostick Dec.") accompanying the Trustee's Motion, specifically the letter from Robert Moore, counsel for Burlingame, to Mark Bostick, counsel for the Trustee (Ex. C), it is Burlingame's position that the Trustee's claims have no merit and that the employment agreement between Ms. Koelling and Kids Connection was a fraudulent scheme designed to defeat the legitimate claims of creditors under which nothing is owed. Notably, Debtors' Objection does not dispute the grounds for the Trustee's proposed compromise.

Burlingame understands that the Trustee also will be responding to Debtors' Objection.

LAW OFFICES
**Allen Matkins Leck Gamble Mallory & Natsis LLP**

-1-
RESPONSE TO KOELLINGS' OBJECTION TO TRUSTEE'S MOTION

Case: 04-46443   Doc# 385   Filed: 12/19/08   Entered: 12/19/08 14:18:31   Page 1 of 6

1. Debtors' Objection rests on a false underpinning. Debtors attempt to assert a claim and object to the Trustee's compromise based on the Employment Agreement between Ms. Koelling and Kids Connection.

2. Debtors admit, however, that:

> In the Debtors' case, the Employment Agreement was not assumed by the debtors-in-possession or by the Trustee following conversion of the case. Consequently, the Employment Agreement was deemed rejected by Debtors' bankruptcy estate pursuant to Bankruptcy Code Section 365. (Objection at 4:12-15; *see also* Objection at 6:12-15.)

3. Assuming for sake of argument that the Employment Agreement was in fact a valid contract, rejection of an executory contract (here the Employment Agreement) under Bankruptcy Code § 365(d), as the Debtors note, constitutes a breach of the contract. *See* Objection at 6:21-23; *see also* K. March, A. Ahart & L. Tchaikovsky, California Practice Guide: Bankruptcy, ¶¶ 16:930, 16:985, at 16-51 and 16-55 (rejection of an executory contract constitutes a breach thereof, giving rise to a damage claim by the *non-breaching party*)(emphasis added).

4. As the Court in *In re Alongi*, 272 B.R. 148 (Bankr. D. Md. 2001) explained, a case cited by Debtors, it is necessary to look to state law to determine the effect of the breach resulting from rejection of the executory contract. *Id.* at 155.

5. Here, it is hornbook law in California that a breach of contract excuses the *non-breaching* party's performance and gives the *non-breaching party* the election of certain remedies. 1 Witkin, Summary of California Law, *Contracts*, § 853 at 940 (10th ed. 2005)(emphasis added).

6. Thus, assuming the Employment Agreement was a valid contract, rejection of the Employment Agreement constituted a breach, which excused Kids Connection's further performance and obligations thereunder. As such, following rejection of the Employment Agreement, neither Debtors nor the Trustee could thereafter continue to enforce the Employment Agreement against Kids Connection.

7. Again, it is worthy of emphasis that Debtors admit they made no attempt to assume the Employment Agreement in the almost three and one-half years in which they were debtors-in-possession.

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

Case: 04-46443    Doc# 385    Filed: 12/19/08    Entered: 12/19/08 14:18:31    Page 2 of 6

8.  Debtors' argument that rejection of the Employment Agreement did not terminate the Employment Agreement (Objection at 6:20-21), misses the point. That rejection of the Employment Agreement did not result in termination, simply means that the non-breaching party may have rights and remedies under the contract as a result of the rejection, as Family Medical Associates had against debtor/physician Alongi. *See In re Alongi*, 272 B.R. at 156; *see also* 11 U.S.C. § 502(g). It does not mean that a debtor, having rejected and repudiated a contract, can then later (following rejection) seek to enforce the rejected contract against the non-breaching party.[2] To do so would turn the consequences of a party's contractual breach on its head. Significantly, Debtors cite no case law that, following rejection, the breaching party can thereafter then seek to enforce the breached contract against the non-breaching party.

9.  As such, Debtors have no right to enforce the Employment Agreement following rejection, and any "Post-Petition Earnings Claim" they purportedly claim to have is unrelated to the Employment Agreement and the liens related thereto.[3]

10. Even if there was an enforceable obligation under the Employment Agreement following rejection - which is not the case, Debtors' claim for ongoing contingent severance pay and purported unpaid post-petition wages has no merit.[4]

11. Section 7(a) of the Employment Agreement clearly states that eligibility for severance applies *only* during the term of the Employment Agreement. As the Employment Agreement was rejected, Debtors are not eligible for severance.

---

[2] Indeed, it appears that Debtors confuse the effect of rejection of a contract with abandonment of property of the estate. Whatever rights may exist under the Employment Agreement, including the lien rights, are property of Debtors' estate, which have not been abandoned. As such, Debtors have no right to attempt to enforce the rights under the Employment Agreement or interfere with the liens related thereto; Debtors attempt to exercise control over property of the estate violates Bankruptcy Code § 362(a)(3).

[3] The Security Agreement (Exhibit B to Koelling Declaration) and Deed of Trust (Exhibit D to the Koelling Declaration) make clear that the collateral granted secures only payment of sums owed under the Employment Agreement, not a purported "Post-Petition Earnings Claim" which did not arise under the Employment Agreement.

[4] Notably, Debtors have no, and indeed do not claim to assert any employment contract or severance agreement with Kids Connection separate from the pre-petition Employment Agreement that was rejected.

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

1    12.     Furthermore, under applicable Ninth Circuit law, post-petition termination
payments (e.g., payments under a severance agreement) that are sufficiently rooted in the
prebankruptcy past are included as property of the bankruptcy estate. *See Rau v. Reyerson (In re
Reyerson)*, 739 F.2d 1423, 1426 (9th Cir. 1986); *Towers v. Wu (In re Wu)*, 173 B.R. 411, 414-415
(9th Cir. B.A.P. 1994).

13.     Here, the Employment Agreement was entered into pre-petition, in September
2002. Under Section 7(a) of the Employment Agreement, Ms. Koelling was allegedly eligible for
severance (as discussed above during the term of the Agreement) if Kids Connection terminated
Ms. Koelling other than for "Cause" or "Permanent Disability," or if Ms. Koelling resigned for
"Good Reason."

14.     Under Section 7(a), Ms. Koelling was, hypothetically, entitled to severance the day
after the Employment Agreement was entered into, the day before the petition date, on the petition
date, or on any other day the conditions to payment (as discussed in paragraph 13 above) were
met. None of the conditions to payment, however, required Ms. Koelling's continued employment
post-petition in order to earn the severance payment. Thus, if there is any right to a severance
payment – which there is not, it is property of the Debtors' estate and subject to the compromise
with the Trustee.

15.     Like the purported contingent severance claim, the Debtors' purported claim to
earned, but unpaid post-petition compensation is barred by the provisions of the Employment
Agreement. Section 2 of the Employment Agreement provides for (a) "Accrued Compensation"
of $750,000 as of the inception of the Employment Agreement and (b) "Postponed Compensation"
of up to $300,000 for up to two years following the inception of the Employment Agreement.
Furthermore, under Section 6(d) of the Employment Agreement, Ms. Koelling was only entitled to
the earned, but unpaid compensation described in Section 2 (Sections 3 and 4 do not provide for
earnings). As the Employment Agreement was entered into effective as of September 27, 2002
and the Koellings' petition date was November 16, 2004 (i.e., more than 2 years later), any
entitlement to earned, but unpaid compensation under the Employment Agreement was unrelated

to services performed after the petition date, was thus property of Debtors' estate, and is thus subject to the compromise with the Trustee.

16. Confirming that any obligation owing under the Employment Agreement was purportedly earned pre-petition and is property Debtors' estate, Debtors included the claim to earned, but unpaid compensation under the Employment Agreement as personal property of Debtors' estate in the Amended Schedules filed with the Court and signed under penalty of perjury by Debtors. *See* Exhibit 1 hereto (Doc. # 53 – Amendments to Schedules B, C and F).[5] Indeed, Debtors admit that the rights under the Employment Agreement were a prepetition asset. As such, there are no obligations owed under the Employment Agreement that are not property of Debtors' estate and subject to the compromise with the Trustee.[6]

17. Still further confirmation that Debtors' claim for ongoing contingent severance pay and purported unpaid post-petition wages has no merit, Debtors filed no proof of claim for the purported contingent severance or unpaid post-petition wages in the Kids Connection bankruptcy case, and the claims bar date in the case was May 12, 2008. *See* Exhibit 2 hereto (Doc. # 8 – Case No. 08-30026).[7] Moreover, during the more than 4 years that Debtors have been in bankruptcy, they have never asserted that they were owed any purported unpaid post-petition wages from Kids Connection, either in this Case or the Kids Connection Case, the monthly operating reports in both bankruptcy cases reflect that Ms. Koelling was paid and received her ongoing compensation, and Ms. Koelling's sworn testimony during the State Court trial admitted that she was not owed anything under the Employment Agreement. *See* Bostick Dec., Ex. C (Letter from Robert Moore, counsel for Burlingame, to Mark Bostick, counsel for the Trustee).

18. As discussed above, any eligibility for severance under Section 7(a) of the Employment Agreement that Debtors might once have had, existed only during the term of the

---

[5] Burlingame requests the Court to take judicial notice of Doc. # 53.
[6] Indeed, as Debtors admit the Employment Agreement is property of Debtors' estate and Debtors' estate is insolvent, Debtors have no standing to object to the Trustee's proposed disposition of the asset through the compromise with Burlingame. *See 60 East 80th Street Equities, Inc. v. Sapir (In re 60 East 80th Street Equities, Inc.)*, 218 F.3d 109, 115-116 (2nd Cir. 2000).
[7] Burlingame requests the Court to take judicial notice of Doc. # 8.

LAW OFFICES
**Allen Matkins Leck Gamble Mallory & Natsis LLP**

Employment Agreement, which has expired. Moreover, under Section 7(a), if Ms. Koelling is terminated for "Cause," which means and includes fraud as determined by a court, there is no eligibility for severance under the Employment Agreement. Here, a jury in Case No. 426631 in the San Mateo Superior Court, found Kids Connection, through the intentional actions of Ms. Koelling, to have engaged in fraud, which resulted in a nearly $5 million jury verdict against Kids Connection. *See* Exhibit 3 hereto (Special Verdict Forms – San Mateo Superior Court, Case No. 426631).[8] As such, Ms. Koelling and Debtors would be ineligible for severance under the Employment Agreement, even if the Employment Agreement was enforceable.

19. It is the height of irony that Debtors, having been found to have engaged in fraud, which lead to a multi-million judgment against Kids Connection and forced Kids Connection to file for bankruptcy, would then later attempt to argue they were entitled to severance from the bankruptcy estate of Kids Connection. As discussed at the outset, Debtors' Objection makes no attempt to dispute grounds for the Trustee's proposed compromise and the allegations leveled against Debtors. Reduced to its essence, Debtors' Objection simply continues the ongoing effort by Debtors to defeat the legitimate claims of creditors both in this Case and the Kids Connection Case through a fraudulent scheme begun more than six years ago. The Court should summarily reject Debtors' ploy and put an end to the fraudulent scheme.

For the reasons set forth above, the arguments set forth in Debtors' Objection provide no basis to deny the Trustee's Motion, which should be approved.

Dated: December 19, 2008
ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP

By: */s/ William W. Huckins*
WILLIAM W. HUCKINS
Attorneys for Burlingame Capital
Partners II, L.P.

---

[8] Burlingame requests the Court to take judicial notice of the Special Verdict Forms.